# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# NORTHERN DIVISION

| | |
|---|---|
| KENNETH L. WOOLDRIDGE, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 2:16CV87 HEA ) |
| MACON ELECTRIC COOPERATIVE, et al., | ) ) ) |
| Defendants. | ) |

## OPINION, MEMORANDUM AND ORDER

This matter comes is the Court on Defendants' Partial Motion to Dismiss for Failure to State a Claim, [Doc. No. 43]. Plaintiff opposes the Motion. For the reasons set forth below, the Motion is granted in part and denied in part.

### Facts and Background

Plaintiff initiated this lawsuit by filing a complaint on December 1, 2016. Defendants Macon Electric Cooperative, Paul LaRue Baker, Harold Beach, Doug Drake, Richard Kemp, Larry Robuck, Nena Robuck, George Phillip Saunders, Kemper Walker, and Glenda Wood filed their pending Partial Motion to Dismiss for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure ("FRCP") 12(b)(6) seeking to dismiss Counts I, II, III, and IV of Plaintiff's Complaint. For purposes of this Motion to Dismiss, the Court accepts as true the following facts alleged in Plaintiff's Complaint. *Great Rivers*

*Habitat Alliance v. Fed. Emergency Mgmt. Agency,* 615 F.3d 958, 988 (8th Cir.2010).

Plaintiff is an individual, a United States citizen, a Missouri resident, and a resident of Chariton County, Missouri. Plaintiff was a member of the Board of Directors for Defendant Macon Electric Cooperative from August 1980 to October 2015.

Defendant Macon Electric Cooperative, ("MEC") is a rural electric distribution cooperative and a member-owned Missouri non-profit corporation with its principal place of business at 31571 Business Hwy 36, Macon, MO 63552. MEC is operated by a Board of Directors ("Board"), which is composed of nine members elected in staggered three-year terms.

Defendants Paul LaRue Baker, Harold Beach, Larry Robuck, George Philip Saunders, Kemper Walker and Glenda Wood were Board members at the time Kathryn A. Smith ("Smith") filed her first complaint with the Missouri Human Rights Commission ("MCHR") and EEOC.

Defendants Jay Collins, Harold Eckler, Richard Kemp, Eugenia Rice-Pulliam, Larry Robuck and Glenda Wood were Board members at the time Smith was discharged from employment with MEC.

Defendant Doug Drake is a Missouri resident and was MEC's General Manager and Smith's supervisor at all times relevant to this Complaint on and before January 7, 2016.

Defendant Nena Robuck is a United States citizen and Missouri resident and the spouse of defendant Larry Robuck.

Smith is a United States citizen and Missouri resident, a 57-year-old woman, and at all relevant times a resident of Macon County, Missouri. Smith was employed by Defendant Macon Electric Cooperative ("MEC") at all relevant times, last holding the position of Office Manager.

MEC is an "employer" for purposes of the Age Discrimination in Employment Act because MEC is, and all relevant times was, a person engaged in an industry affecting commerce with 20 or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year. *See* 29 U.S.C. § 630(b).

MEC is an "employer" for purposes of Title VII because MEC is, and at all relevant times was, a person engaged in an industry affecting commerce with 15 or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and is not the United States or any corporation wholly owned by the Government of the United States, an Indian tribe,

any department or agency of the District of Columbia, or a bona fide private membership club. *See* 42 U.S. Code § 2000e(b).

MEC is an "employer" for purposes of the Missouri Human Rights Act because MEC at all relevant times employed six or more persons within the state and is not a corporation or association owned and operated by any religious or sectarian group.

Each Board member is an employer for purposes of the Missouri Human Rights Act because MEC is an employer and the Board members at all relevant times directly acted in the interest of MEC.

Drake is an employer for purposes of the Missouri Human Rights Act because MEC is an employer and Drake at all relevant times directly acted in the interest of MEC.

In August 1980, plaintiff was elected to MEC's Board of Directors. From then on, plaintiff served continuously on the Board until October 3, 2015. As of the end of his tenure on the Board, plaintiff was compensated at the rate of $100 per Board meeting, $80 per day for any other meetings at which he represented MEC, $500 per day for any time in which he represented the Northeast Missouri Electric Power Cooperative (as MEC's selected representative), and was provided with $400 per month in insurance.

From November 20, 1989 to January 13, 2016, Smith was employed full time by MEC, last holding the position of Office Manager.

Around July 2011, plaintiff, a widower, began spending time socially with Smith.

In October 2011, plaintiff told the rest of the Board members that he was seeing Smith. Initially, no one on the Board expressed any objection to the relationship between plaintiff and defendants' employee Smith. In fact, MEC Board elected plaintiff as MEC representative on the Northeast Power Board.

However, around that same time Smith began to feel she was being subjected to harassment and a hostile work environment at MEC and by Defendant Drake because of her age and sex.

At the Board's next meeting, in July 2012, some members of the Board expressed concern over plaintiff's relationship with Smith, alleging a conflict of interest.

After the Board obtained a legal opinion that there was no violation of bylaw or policy created by the relationship, plaintiff was approved for nomination to the Board of Directors and in August of 2013 and was re-elected for a three year term (2013 to 2016).

In the fall of 2013, the Board voted to exclude only Smith and one other employee from annual salary increases. After the vote, plaintiff called defendants

Drake and other Board members to criticize the decision, stating that in all his time on the Board no employee had been denied an annual raise before.

In November 2013, the Board voted to find that plaintiff had violated a "board policy" on conflicts of interest by "lobbying" for a pay raise for Smith, voted to reprimand and censure plaintiff, and requested that plaintiff resign as a Board member.

In August 2014, the Board proposed an amendment to the MEC bylaws that would redefine "conflict of interest" so that the definition would include plaintiff's relationship
with Smith.

On October 11, 2014, Smith sent a letter to defendant Drake informing him that her "workplace environment at Macon Electric Cooperative has become increasingly hostile" in that her duties had been reduced, with some reassigned to younger employees, her access to files and computer drives had been removed, her salary was frozen, and she was being obstructed in the performance of her job duties.  In the October 11, 2014 letter, Smith wrote: "I am left to conclude that my gender and/or age have been contributing factors in decisions that ultimately are being designed to eliminate my position, demote me, and/or result in involuntary separation of my employment with Macon Electric Cooperative."

Smith had been scheduled to receive an employee performance evaluation around this time. On October 16, 2014, defendant Drake sent an email to Smith stating, "Due to your discrimination allegations your performance evaluation will be postponed until a later date and time." Smith never received another performance evaluation during her employment at MEC.

On November 18, 2014, Smith sent defendant Drake a letter explaining that he was not affording her sufficient time to complete a major project, even though other employees had been given more time and more resources to complete similar projects.

On November 20, 2014, Smith sent a letter to the then-President of the Board, Robert Long, alleging that defendant Drake was subjecting her to a "continuing and increasing hostile work environment" and retaliation for complaining of the hostile work environment and discrimination and asking Long to intervene.

On March 10, 2015, Smith filed a charge of discrimination with the Missouri Commission on Human Rights (MCHR), Charge No. 28E-2015-00758C alleging discrimination because of her sex and age, retaliation, and hostile work environment.

Soon after Smith filed the charge, she began to suffer increased harassment and hostility at work. Defendant Drake removed some of Smith's duties, excluded

7

her from meetings and other events she had formerly participated in, and began criticizing Smith's work. Such and similar harassment continued throughout the rest of Smith's employment.

Throughout the same time, plaintiff was increasingly pressured by other Board members to resign from the Board. Also during that time, the Board repeatedly excluded plaintiff from portions of Board meetings in order to discuss Smith, her complaints of discrimination and hostile work environment, and related matters. When present for discussion of Smith at Board meetings, plaintiff defended Smith and the other employee that was denied a raise.

After the July 2015 Regular Board was adjourned several board members, Drake and Attorney Andrew Sporleder held a discussion on how to embarrass Smith and the plaintiff. Questions were prepared to be planted in the membership at the 2015 Annual Meeting and prepared answers were rehearsed by the President of the Board, Drake and Sporleder.

On August 3, 2015, the President of the Board at the time, defendant Harold Beach, published an advertisement in several local public sources entitled "MEC MEMBER ALERT!!" which contained a list of false statements and accusations against plaintiff and Smith. Statements in the "MEC MEMBER ALERT!!":

   a. depicted plaintiff as "forcefully" telling the other Board members "that they made a mistake and should give [Smith] a raise";

b. referred to plaintiff as "lobbying for pay increase of [Smith] while in a personal relationship, a clear conflict of interest between best interests of [MEC] and individual employee";

c. publicly announced that plaintiff had retained "a Columbia MO lawyer" and threatened to sue MEC and its directors;

d. publicly announced that Smith retained the "same Columbia MO lawyer as plaintiff" and began "making accusations of discrimination against" MEC;

e. complained that Smith's complaints had cost MEC "a lot of time, money, and frustration";

f. claimed that a "neutral HR consultant" had investigated and found "no discrimination";

g. publicly announced that in November 2014 Smith made "more allegations which are again investigated by the HR consultant who again finds no wrongdoing by" MEC; and

h. publicly announced that Smith had filed a claim of discrimination with the Missouri Commission on Human Rights and EEOC.

The flyer concluded (emphasis in original):

> As you can see, events over the past few years have cost YOUR Coop a lot of time, money and frustration. Don't believe misinformation about YOUR Coop. The Board has had to deal with a lot of distractions in addition to overseeing the business of YOUR Coop. **Don't let anyone tell you who to vote for, that's YOUR decision.**

At the bottom of the "MEC MEMBER ALERT!!" appeared "Harold E. Beach, President: MEC" and Beach's phone number.

Around the same time, the Board's secretary/treasurer, defendant Glenda Wood, sent a letter to at least one MEC member vouching that the "MEC

9

MEMBER ALERT!!" was "a timeline of the facts as per board minutes and the Truth!" Defendant Wood's letter further claimed that plaintiff "misrepresented the truth by placing the words, 'may' be against the law and 'might' stating that the by-law amendment should not be passed," that plaintiff was "distorting the facts in newspaper ads and circulated documents telling you whom to vote for and trying to keep the current board members from re-election," and that he was "doing this to suit his own agenda and to try to manage the board." Defendant Wood's letter further stated:

> I can assure you it is not because he is thinking what is best for this Coop. Remember, lawyer fees are due to this entire situation. The MEC board never had a lawyer present at our regular meetings in the past, although most of the Coop boards do in MO and throughout the nation, until this problem arose…The Coop continues to give you Capital Credits while we struggle to keep up with the rising costs of operating your cooperative.

Defendant Wood signed the letter as "Glenda Wood Secretary/Treasurer."

The same "MEC ALERT" information published in several local sources was printed on 4.25 x 11 blue cardstock flyers and placed in local businesses. These flyers were also sent to selected members with a notation on the back claiming "This list was made by the lawyer for the Co-op" and was signed Larry and Nena Robuck.

Secretary/Treasurer Glenda Wood passed out MEC Member Alert Flyers to members as they entered the 2015 Annual Meeting.

After the Annual Meeting in 2015 where no incumbents were re-elected, a meeting was held in Clarence, Missouri. The meeting was attended by the three incumbents along with at least one active board member along with approximately 75 people. Plans were made to circulate a petition to call a special meeting for the purpose of voting on holding a member vote to remove the plaintiff from office. Plaintiff was not notified of this meeting. After gathering member signatures, the Board called a special meeting for October 3, 2015, to vote on removing plaintiff from office. At the special meeting, the members in attendance voted to remove plaintiff from the Board.

On January 7 and 8, 2016, the Board interviewed MEC office employees for the stated reason that the Board needed to gather information for use in evaluating candidates for Drake's General Manager position and in making MEC a better working environment.

A former board member told Smith that a current Board member overheard MEC's attorney state that the actual purpose of these interviews was to gather information from employees to justify Smith's termination. The former board member also told Smith that when he was on the Board, there had been a discussion about how defendant Drake was going to make Smith's job so difficult that she would resign.

On January 11, 2016, Smith emailed the Board president and attorney asking for a meeting to discuss her complaint to the EEOC, saying she wanted to resolve the issues it raised and move on, but she received no response.

On January 13, 2016, Smith was called into a meeting that included the president of the Board, the Board's secretary, another director, and an attorney for the Board. The attorney informed Smith that her employment was terminated. The attorney listed several reasons for Smith's termination, but refused to provide Smith a copy of the list of those reasons.

On February 1, 2016, Smith filed another charge of discrimination with the MCHR, alleging discrimination and retaliation in violation of the Missouri Human Rights Act, The Age Discrimination in Employment Act, and Title VII of The Civil Rights Act of 1964, as amended. Smith filed suit against some of the same defendants named in this matter on August 19, 2016, in Case No. 2:16-cv-00057-CEJ.

On February 26, 2016, plaintiff filed a charge with the MCHR, alleging retaliation in violation of the Missouri Human Rights Act, Title VII of the Civil Rights Act, and the ADEA, based on the same incidents alleged in this complaint. Plaintiff's charge was cross-filed with the EEOC by MCHR.

On September 7, 2016, the Missouri Commission on Human Rights issued Plaintiff a Right to Sue Letter.

On November 1, 2016, the EEOC issued plaintiff a Right to Sue Letter.

Defendants now seek to dismiss Plaintiff's claims on Counts I, II, III, and IV.

**Motion to Dismiss Standard**

Under FRCP 12(b)(6), a party may move to dismiss a claim for "failure to state a claim upon which relief can be granted." The notice pleading standard of FRCP 8(a)(2) requires a plaintiff to give "a short and plain statement showing that the pleader is entitled to relief." To meet this standard and to survive a FRCP 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (internal quotations and citation omitted). This requirement of facial plausibility means the factual content of the plaintiff's allegations must "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Cole v. Homier Distrib. Co.,* 599 F.3d 856, 861 (8th Cir.2010) (quoting *Iqbal,* 556 U.S. at 678). Courts must assess the plausibility of a given claim with reference to the plaintiff's allegations as a whole, not in terms of the plausibility of each individual allegation. *Zoltek Corp. v. Structural Polymer Group,* 592 F.3d 893, 896 n. 4 (8th Cir.2010) (internal citation omitted). This inquiry is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal,* 556 U.S. at 679. The

Court must grant all reasonable inferences in favor of the nonmoving party.

*Lustgraaf v. Behrens,* 619 F.3d 867, 872–73 (8th Cir.2010).

## Discussion

**Counts I -Violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, et seq.,**

Title VII prohibits retaliation in employment:

> **Discrimination for making charges, testifying, assisting, or participating in enforcement proceedings**
> It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment, for an employment agency, or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs, to discriminate against any individual, or for a labor organization to discriminate against any member thereof or applicant for membership, because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3.

Title VII prohibits discrimination against an employee or job applicant "because [s]he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e-3(a); *Robinson v. Shell Oil Co*., 519 U.S. 337 (1997).

Title VII makes it unlawful for an employer to discriminate against an employee because the employee "has opposed any practice made an unlawful employment practice [by Title VII] ... or ... has made a charge, testified, assisted,

or participated in any manner in an investigation, proceeding, or hearing [under Title VII]." 42 U.S.C. § 2000e–3(a). "The two clauses of this section typically are described, respectively, as the opposition clause and the participation clause." *Barker v. Missouri Dept. of Corrections,* 513 F.3d 831, 834 (8th Cir.2008). Plaintiffs claim is viewed under the opposition clause, "which shields an employee against discrimination because he has opposed a practice made unlawful by Title VII." *Id.*

To establish a prima facie case of unlawful retaliation, plaintiff must establish that (1) he engaged in protected conduct, including opposition to an action prohibited by Title VII; (2) his employer took an adverse action against him; and (3) the adverse action was causally linked to the protected conduct. *Tyler v. University of Arkansas Bd. of Trustees,* 628 F.3d 980, 985 (8th Cir.2011). *Marzec v. Marsh,* 990 F.2d 393, 396 (8th Cir.1993). "In terms of the causal connection, the plaintiff must show that the protected conduct was a 'determinative—not merely motivating—factor in the employer's adverse employment decision.' " *Tyler v. University of Arkansas Bd. of Trustees,* 628 F.3d 980, 985 (8th Cir.2011) (quoting *Van Horn v. Best Buy Stores, L.P.,* 526 F.3d 1144, 1148 (8th Cir.2008)). "If an employee establishes a prima facie case of retaliation, the burden shifts to the employer to articulate a legitimate, non-retaliatory reason for its action; if the employer does so, the burden shifts back to the employee to put forth evidence of

pretext, the ultimate question being whether a prohibited reason, rather than the proffered reason, actually motivated the employer's action." *Pye v. Nu Aire, Inc.,* 641 F.3d 1011, 1021 (2011) (quoting *Fercello,* 612 F.3d at 1077–78). Under Title VII, a plaintiff may only bring a claim against an "employer." 42 U.S.C. § 2000e-2(a).

Plaintiff's Complaint clearly fails to state a cause of action against MEC in that the Complaint fails to allege an employer-employee relationship between Plaintiff and MEC.

**Count II-Retaliation in Violation of the Age Discrimination in Employment Act, 29 U.S.C. § 623, et seq.**

Likewise, in order to state a claim under the ADEA, a plaintiff must allege an employer-employee relationship between plaintiff and defendant. The ADEA states

> It shall be unlawful for *an employer ... to fail or refuse to hire or to discharge any individual* or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age.

29 U.S.C. § 623(a)(1). (emphasis added).

Although Plaintiff's Complaint alleges that MEC is "an" employer, he fails to set forth sufficient allegations that MEC was *his* employer, and therefore, Plaintiff's Count II fails to set forth a viable ADEA claim.

**Counts III and IV- Missouri Revised Statute § 213.070**

Defendants assert that Counts III and IV must be dismissed on the same grounds as Counts I and II, *i.e.*, Plaintiff has failed to allege an employer-employee relationship between Plaintiff and Defendants. This statute, however, currently[1] provides a broader scope of discrimination.

It shall be an unlawful discriminatory practice:

(1) To aid, abet, incite, compel, or coerce the commission of acts prohibited under this chapter or to attempt to do so;

(2) To retaliate or discriminate in any manner against any other person because such person has opposed any practice prohibited by this chapter or because such person has filed a complaint, testified, assisted, or participated in any manner in any investigation, proceeding or hearing conducted pursuant to this chapter;

---

[1] See Senate Bill 43(with changes underscored):
213.070. 1. It shall be an unlawful discriminatory practice for an employer, employment agency, labor organization, or place of public accommodation:
(1) To aid, abet, incite, compel, or coerce the commission of acts prohibited under this chapter or to attempt to do so;
(2) To retaliate or discriminate in any manner against any other person because such person has opposed any practice prohibited by this chapter or because such person has filed a complaint, testified, assisted, or participated in any manner in any investigation, proceeding or hearing conducted pursuant to this chapter;
(3) For the state or any political subdivision of this state to discriminate on the basis of race, color, religion, national origin, sex, ancestry, age, as it relates to employment, disability, or familial status as it relates to housing; or
(4) To discriminate in any manner against any other person because of such person's association with any person protected by this chapter.
2. This chapter, in addition to chapter 285 and chapter 287, shall provide the exclusive remedy for any and all claims for injury or damages arising out of an employment relationship.

2017 Missouri Senate Bill No. 43, Missouri Ninety-Ninth General Assembly, First Regular Session, 2017 Missouri Senate Bill No. 43, Missouri Ninety-Ninth General Assembly, First Regular Session (May 8, 2017).

(3) For the state or any political subdivision of this state to discriminate on the basis of race, color, religion, national origin, sex, ancestry, age, as it relates to employment, disability, or familial status as it relates to housing; or
(4) To discriminate in any manner against any other person because of such person's association with any person protected by this chapter.

MoRevStat. § 213.070.

> It is immediately obvious that the language employed by the Congress in 42 U.S.C. § 2000e–3(a) is considerably more limited than the exceedingly broad "in any manner against any other person" language adopted by the Missouri legislature in section 213.070. Indeed, the difference in the language employed by the two statutes is sufficiently stark to render judicial interpretations of the federal law inapposite for purposes of assigning meaning to section 213.070.
>
> The language of section 213.070(2) is clear and unambiguous. The statute renders retaliation "in any manner against any other person" an unlawful discriminatory practice.
>
> Where the language of the statute is unambiguous, courts must give effect to the language used by the legislature. *Kearney Special Road District v. County of Clay,* 863 S.W.2d 841, 842 (Mo. banc 1993). Courts lack authority "to read into a statute a legislative intent contrary to the intent made evident by the plain language. [Citation omitted.] There is no room for construction even when the court may prefer a policy different from that enunciated by the legislature." *Id.* at 842.
>
> Hereford argues, however, that the purposes of the Missouri Act—to prohibit discrimination in housing, commercial real estate loans, employment, public accommodations, and the sale or rental of real estate—are more limited than the language of section 213.070. Hereford urges that reading the *625 language of the statute as broadly as its plain meaning suggests would lead to absurd results, permitting actions for retaliation under the Act where no relationship exists between the person claiming retaliation and the person charged with retaliation.

*Keeney v. Hereford Concrete Prod., Inc.,* 911 S.W.2d 622, 624–25 (Mo. 1995).

The Missouri Supreme Court found "[t]he language of section 213.070(2) is clear and unambiguous. The statute renders retaliation in any manner against any other person an unlawful discriminatory practice." *Id*. The Supreme Court held "retaliation" under section 213.070 "must be given broader meaning" because it is not limited to the "employer-employee relationship." *Id.* (internal quotations omitted). Although the Supreme Court found "the statutory language is broad enough to give us pause, it is unambiguous and consistent with the purposes of chapter 213." *Id.* at 625. Thus, "courts must give effect to the language used by the legislature." *Id.* at 624. Based upon the Court's reading of the statute and *Keeney*, and resolving any ambiguities in the law in favor of Plaintiff, the Court finds there a reasonable basis for predicting the state law may impose liability against Defendants under the current section 213.070.

The statute lists two situations in which retaliation can occur: 1) because a person has opposed a practice prohibited by Chapter 213 or 2) because a person filed a complaint, testified, or participated in an investigation, proceeding or hearing conducted pursuant to Chapter 213. Mo.Rev.Stat. § 213.070. To prove a violation, a plaintiff alleging unlawful retaliation must show he engaged in a protected activity and as a direct result, suffered damages. *Williams v. City of Marston,* 857 F.Supp.2d 852, 562 (E.D.Mo.2012) (citing *Keeney,* 911 S.W.2d at

625.) Plaintiff has alleged he engaged in two protected activities, and as a direct result, he suffered damages. Plaintiff's allegation he was retaliated against, because he complained of the unlawful employment practices, still stands. Nothing in the statute suggests the complaint upon which the retaliation is based must have merit in a future lawsuit. At this stage in the proceedings, that is enough. Plaintiff has sufficiently pled a claim for retaliation. As such, the Motion to Dismiss Counts III and IV is denied.

## Conclusion

Based upon the foregoing analysis, the Motion to Dismiss Counts I and II is granted. The Motion as to Counts III and IV is denied.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss, [Doc. No. 43] is **GRANTED, in part, and DENIED, in part.**

**IT IS FURTHER ORDERED** that Counts I and II are **Dismissed**.

Dated this 15th day of May, 2017.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE