UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | |
|---|---|
| KENNETH WOOLDRIDGE, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 2:16CV87 HEA |
| ) | |
| MACON ELECTRIC COOPERATIVE, ) | |
| et al., ) | |
| ) | |
| Defendants. ) | |

# **OPINION, MEMORANDUM AND ORDER**

This matter is before the Court on Defendant Macon Electric Cooperative's ("MEC") Motion for Sanctions, [Doc. No. 57] and Defendants Baker, Beach, Drake, Kemp, Larry Robuck, Nena Robuck, Sanders, Walker, and Wood's Motion to Join Defendant Macon Electric Cooperative's Motion for Sanctions, [Doc. No. 79]. Plaintiff opposes the Motions. For the reasons set forth below, the Motions are granted.

## **Facts and Background**

Plaintiff initiated this lawsuit by filing a complaint on December 1, 2016. The Complaint alleges the following:

Plaintiff is an individual, a United States citizen, a Missouri resident, and a resident of Chariton County, Missouri. Plaintiff was a member of the Board of

Directors for Defendant Macon Electric Cooperative from August 1980 to October 2015.

Kathryn A. Smith is a United States citizen and Missouri resident, a 57-year-old woman, and at all relevant times a resident of Macon County, Missouri. Smith was employed by Defendant MEC at all relevant times, last holding the position of Office Manager.

In August 1980, plaintiff was elected to MEC's Board of Directors. From then on, plaintiff served continuously on the Board until October 3, 2015. As of the end of his tenure on the Board, plaintiff was compensated at the rate of $100 per Board meeting, $80 per day for any other meetings at which he represented MEC, $500 per day for any time in which he represented the Northeast Missouri Electric Power Cooperative (as MEC's selected representative), and was provided with $400 per month in insurance.

From November 20, 1989 to January 13, 2016, Smith was employed full time by MEC, last holding the position of Office Manager.

Around July 2011, plaintiff began spending time socially with Smith. In October 2011, plaintiff told the rest of the Board members that he was seeing Smith. Initially, no one on the Board expressed any objection to the relationship between plaintiff and defendants' employee Smith.

2

However, around that same time Smith began to feel she was being subjected to harassment and a hostile work environment at MEC and by Defendant Drake because of her age and sex.

At the Board's next meeting, in July 2012, some members of the Board expressed concern over plaintiff's relationship with Smith, alleging a conflict of interest.

After the Board obtained a legal opinion that there was no violation of bylaw or policy created by the relationship, plaintiff was approved for nomination to the Board of Directors and in August of 2013 was re-elected for a three year term (2013 to 2016).

In the fall of 2013, the Board voted to exclude only Smith and one other employee from annual salary increases. After the vote, plaintiff called defendants Drake and other Board members to criticize the decision, stating that in all his time on the Board no employee had been denied an annual raise before.

In November 2013, the Board voted to find that plaintiff had violated a "board policy" on conflicts of interest by "lobbying" for a pay raise for Smith, voted to reprimand and censure plaintiff, and requested that plaintiff resign as a Board member.

3

In August 2014, the Board proposed an amendment to the MEC bylaws that would redefine "conflict of interest" so that the definition would include plaintiff's relationship with Smith.

On October 11, 2014, Smith sent a letter to defendant Drake informing him that her "workplace environment at Macon Electric Cooperative has become increasingly hostile" in that her duties had been reduced, with some reassigned to younger employees, her access to files and computer drives had been removed, her salary was frozen, and she was being obstructed in the performance of her job duties. In the October 11, 2014 letter, Smith wrote: "I am left to conclude that my gender and/or age have been contributing factors in decisions that ultimately are being designed to eliminate my position, demote me, and/or result in involuntary separation of my employment with Macon Electric Cooperative."

On March 10, 2015, Smith filed a charge of discrimination with the Missouri Commission on Human Rights (MCHR), Charge No. 28E-2015-00758C alleging discrimination because of her sex and age, retaliation, and hostile work environment.

Soon after Smith filed the charge, she began to suffer increased harassment and hostility at work. Defendant Drake removed some of Smith's duties, excluded her from meetings and other events she had formerly participated in, and began

criticizing Smith's work. Such and similar harassment continued throughout the rest of Smith's employment.

Throughout the same time, plaintiff was increasingly pressured by other Board members to resign from the Board. Also during that time, the Board repeatedly excluded plaintiff from portions of Board meetings in order to discuss Smith, her complaints of discrimination and hostile work environment, and related matters. When present for discussion of Smith at Board meetings, plaintiff defended Smith and the other employee that was denied a raise.

After the July 2015 Regular Board was adjourned several board members, Drake and Attorney Andrew Sporleder held a discussion on how to embarrass Smith and the plaintiff. Questions were prepared to be planted in the membership at the 2015 Annual Meeting and prepared answers were rehearsed by the President of the Board, Drake and Sporleder.

On August 3, 2015, the President of the Board at the time, defendant Harold Beach, published an advertisement in several local public sources entitled "MEC MEMBER ALERT!!" which contained a list of false statements and accusations against plaintiff and Smith. Statements in the "MEC MEMBER ALERT!!":

a. depicted plaintiff as "forcefully" telling the other Board members "that they made a mistake and should give [Smith] a raise";

5

b. referred to plaintiff as "lobbying for pay increase of [Smith] while in a personal relationship, a clear conflict of interest between best interests of [MEC] and individual employee";

c. publicly announced that plaintiff had retained "a Columbia MO lawyer" and threatened to sue MEC and its directors;

d. publicly announced that Smith retained the "same Columbia MO lawyer as plaintiff" and began "making accusations of discrimination against" MEC;

e. complained that Smith's complaints had cost MEC "a lot of time, money, and frustration";

f. claimed that a "neutral HR consultant" had investigated and found "no discrimination";

g. publicly announced that in November 2014 Smith made "more allegations which are again investigated by the HR consultant who again finds no wrongdoing by" MEC; and

h. publicly announced that Smith had filed a claim of discrimination with the Missouri Commission on Human Rights and EEOC.

The flyer concluded (emphasis in original):

> As you can see, events over the past few years have cost YOUR Coop a lot of time, money and frustration. Don't believe misinformation about YOUR Coop. The Board has had to deal with a lot of distractions in addition to overseeing the business of YOUR Coop. **Don't let anyone tell you who to vote for, that's YOUR decision.**

At the bottom of the "MEC MEMBER ALERT!!" appeared "Harold E. Beach, President: MEC" and Beach's phone number.

Around the same time, the Board's secretary/treasurer, defendant Glenda Wood, sent a letter to at least one MEC member vouching that the "MEC

MEMBER ALERT!!" was "a timeline of the facts as per board minutes and the Truth!" Defendant Wood's letter further claimed that plaintiff "misrepresented the truth by placing the words, 'may' be against the law and 'might' stating that the by-law amendment should not be passed," that plaintiff was "distorting the facts in newspaper ads and circulated documents telling you whom to vote for and trying to keep the current board members from re-election," and that he was "doing this to suit his own agenda and to try to manage the board." Defendant Wood's letter further stated:

> I can assure you it is not because he is thinking what is best for this Coop. Remember, lawyer fees are due to this entire situation. The MEC board never had a lawyer present at our regular meetings in the past, although most of the Coop boards do in MO and throughout the nation, until this problem arose…The Coop continues to give you Capital Credits while we struggle to keep up with the rising costs of operating your cooperative.

Defendant Wood signed the letter as "Glenda Wood Secretary/Treasurer."

The same "MEC ALERT" information published in several local sources was printed on 4.25 x 11 blue cardstock flyers and placed in local businesses. These flyers were also sent to selected members with a notation on the back claiming "This list was made by the lawyer for the Co-op" and was signed Larry and Nena Robuck.

Secretary/Treasurer Glenda Wood passed out MEC Member Alert Flyers to members as they entered the 2015 Annual Meeting.

After the Annual Meeting in 2015 where no incumbents were re-elected, a meeting was held in Clarence, Missouri. The meeting was attended by the three incumbents along with at least one active board member along with approximately 75 people. Plans were made to circulate a petition to call a special meeting for the purpose of voting on holding a member vote to remove the plaintiff from office. Plaintiff was not notified of this meeting. After gathering member signatures, the Board called a special meeting for October 3, 2015, to vote on removing plaintiff from office. At the special meeting, the members in attendance voted to remove plaintiff from the Board.

On January 7 and 8, 2016, the Board interviewed MEC office employees for the stated reason that the Board needed to gather information for use in evaluating candidates for Drake's General Manager position and in making MEC a better working environment.

A former board member told Smith that a current Board member overheard MEC's attorney state that the actual purpose of these interviews was to gather information from employees to justify Smith's termination. The former board member also told Smith that when he was on the Board, there had been a discussion about how defendant Drake was going to make Smith's job so difficult that she would resign.

On January 11, 2016, Smith emailed the Board president and attorney asking for a meeting to discuss her complaint to the EEOC, saying she wanted to resolve the issues it raised and move on, but she received no response.

On January 13, 2016, Smith was called into a meeting that included the president of the Board, the Board's secretary, another director, and an attorney for the Board. The attorney informed Smith that her employment was terminated. The attorney listed several reasons for Smith's termination, but refused to provide Smith a copy of the list of those reasons.

On February 1, 2016, Smith filed another charge of discrimination with the MCHR, alleging discrimination and retaliation in violation of the Missouri Human Rights Act, The Age Discrimination in Employment Act, and Title VII of The Civil Rights Act of 1964, as amended. Smith filed suit against some of the same defendants named in this matter on August 19, 2016, in Case No. 2:16-cv-00057-CEJ.

On February 26, 2016, plaintiff filed a charge with the MCHR, alleging retaliation in violation of the Missouri Human Rights Act, Title VII of the Civil Rights Act, and the ADEA, based on the same incidents alleged in this complaint. Plaintiff's charge was cross-filed with the EEOC by MCHR.

On September 7, 2016, the Missouri Commission on Human Rights issued Plaintiff a Right to Sue Letter.

9

On November 1, 2016, the EEOC issued plaintiff a Right to Sue Letter.

The Board decided to not give Smith and another employee raises in pay, while authorizing pay increases for other employees. Plaintiff became upset with this decision and argued in favor of a raise for Smith. The Board became weary that Plaintiff had a conflict of interest between his membership on the Board and his relationship with Smith, an MEC employee. It sought advice from counsel and asked Plaintiff to excuse himself from these discussions.

During the pendency of the Smith lawsuit, Defendants discovered that Plaintiff had recorded and listened to communications between MEC and its attorney regarding Plaintiff and Smith's legal claims against MEC and the Board Members, after Plaintiff had been asked to leave the Board meetings for this specific purpose. Plaintiff recorded the Board discussions he was excused from until he was involuntarily removed from the Board in October 2015 after a public hearing and Coop member vote.

In addition to the recording of and listening to the conversations, Plaintiff shared information he obtained with Smith and their shared attorney. Plaintiff also shared with his attorney that he received a memo from MEC's attorney which was styled: "Privileged and confidential-Attorney work product and attorney client communication." Contained within this Memorandum were MEC's attorney's recommendations regarding Smith's threatened legal claims.

10

## Discussion

Courts have a number of implied powers necessary to manage their own affairs and achieve the orderly and expeditious disposition of cases. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991). These inherent powers include the imposition of sanctions for the willful disobedience of a court order or when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons. *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 258–59 (1975). Sanctions may include outright dismissal of a lawsuit and assessment of attorney's fees. *See Chambers*, 501 U.S. at 45 ("outright dismissal of a lawsuit… is a particularly severe sanction, yet is within the court's discretion." Inherent powers must be exercised with restraint and discretion, and a primary aspect of that discretion is the ability to fashion an appropriate sanction for conduct which abuses the judicial process. *Chambers*, 501 U.S. at 44-45.

Plaintiff attempts to justify the recording of the Board discussions after he left by arguing that he, as a Board member, was entitled to listen to and participate in Board meetings and that his behavior can be likened to "taking detailed notes." This justification is belied by the concealed nature of the recordings, the nondisclosure of the recordings by Plaintiff to the Board, and the disclosure to Smith and counsel for Plaintiff and Smith for use in Smith's lawsuit. Plaintiff's motivation for recording these meetings is clear: Plaintiff was attempting to gain

information that related to a conflict of interest between him as a Board member and the romantic partner of an employee of MEC whose interests he was advocating. Plaintiff has failed to provide good cause for his secretly recording conversations between MEC and its attorney of which he was the topic of discussion.

Moreover, the Court has considered the conduct of Plaintiff since the recordings. Plaintiff did not disclose to MEC that he had recorded these privileged conversations. Plaintiff encouraged Smith to listen to the conversations regarding the relationship between Plaintiff and Smith and how it affected Plaintiff's duties as a member of the Board and loyalty to the Board. Plaintiff shared information that he *knew* to be confidential in nature with the attorney for both Smith and Plaintiff in their planning and actions *against* the Board. The Court finds that Plaintiff has acted in bad faith. The failure to recognize the significance of surreptitiously taping private, confidential attorney-client conversations further demonstrates this bad faith. It is clear that Plaintiff has engaged in bad-faith conduct intended to abuse the judicial process and harass Defendants.

The Court considered the range of sanctions available under its inherent authority, including monetary sanctions, attorney's fees, and striking of pleadings. Although the Court is reluctant to impose the severest of sanctions in the form of dismissal of the lawsuit with prejudice, it must also consider the extent to which

Plaintiff continued taping and then used the tapes to gain an extremely unfair advantage over the Board. The Court concludes that dismissal with prejudice is the appropriate sanction.

## Conclusion

**IT IS HEREBY ORDERED** that based on Plaintiff's repeated willful interception of attorney-client conversations over an extended period of time and the improper use of his position as a Board member of the disclosure of a privileged communication, this matter is **DISMISSED WITH PREJUDICE** under the Court's inherent authority to impose sanctions. Attorneys' fees will not be assessed against Plaintiff.

**IT IS FURTHER ORDERED** that all pending motions are **DENIED as moot**.

A separate Order of Dismissal shall accompany this Memorandum and Order.

Dated this 11th day of September, 2018.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE